IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger

Civil Action No. 14-cv-02286-MSK-NYW

THOMAS E. PEREZ, Secretary of Labor, United States Department of Labor,

    Plaintiff,

v.

LOCAL 1001, AMALGMATED TRANSIT UNION,

    Defendant.

_____

**OPINION AND ORDER GRANTING MOTIONS FOR SUMMARY JUDGMENT AND DIRECTING JUDGMENT IN FAVOR OF THE UNION**
_____

**THIS MATTER** comes before the Court pursuant to the Plaintiff's ("Secretary") Motion for Summary Judgment **(# 40)**, and the Defendant's ("Union") Motion for Summary Judgment **(# 41)** to which the Secretary filed a response **(# 42)**. The parties have stipulated to all pertinent facts. The sole remaining issue in this case is a legal issue suitable for resolution without trial.

## ISSUE

The question presented is whether the Secretary can compel the Union to re-open nominations prior to a new election required by 29 U.S.C. § 482.

The Labor-Management Reporting and Disclosures Act ("LMRDA"), 42 U.S.C. § 481, provides certain procedural requirements that must be followed in elections involving labor unions. In December 2013, the Union held a series of elections to fill its various offices. Thereafter, a member of the Union filed a complaint with the Secretary, alleging that the procedures used by the Union in both the nominating and voting phases of the election violated the LMRDA. The Secretary conducted an investigation into the member's complaint, and

1

ultimately concluded that although there were no apparent violations in the nominating process, the general voting phase of the election violated the LMRDA's requirement that elections be conducted via a secret ballot.  42 U.S.C. § 481(b).  The parties here agree that the appropriate remedy for this violation is that a new election must be conducted for particular offices.  29 U.S.C. § 482 (appropriate remedy is for court to "direct the conduct of a new election under supervision of the Secretary").

The parties disagree as to whether this new election requires the Union to re-open the nominating process as well.  The parties do not appear to dispute that the Secretary can, in appropriate circumstances, require that new nominations be solicited as part of the remedy for an unfair election; rather, the parties' dispute here concerns whether the Secretary's requirement that the Union reopen nominations is an arbitrary and capricious exercise of that power in this case.

## MATERIAL FACTS

The Secretary relies on what it contends is the Department of Labor's "longstanding policy" that when new elections are directed under 29 U.S.C § 482, that process includes the re-opening of nominations.  The Secretary, however, routinely waives the requirement of new nominations in circumstances where "a settlement [of the charges of an unfair election] is executed within a year of the challenged election and if there were no violations with respect to nominations."[1]  The Court understands that the Defendant acknowledges the existence of this "policy" and practice of waiving it when less than a year passes between an unfair election and a

---

[1]  New nominations will be required if a race would otherwise become uncontested, such as where all but one of the previously-nominated candidates have ceased their membership in the union in the intervening time.

new election though neither the policy nor the conditions under which it is waived are formally memorialized in any document of record.

The question arises as to whether the Secretary can also waive the policy's requirement of new nominations once the one-year period has lapsed. The Court understands the Secretary to contend that he has no discretion to do so. He explains that if considerable time elapses between the original election and the new election, the membership composition of the union could change significantly, and new members who were not present for the initial nominations would be deprived of the opportunity to participate in the nominating process or avail themselves of the opportunity to be nominated themselves.

The Union argues that it should not have to re-open the nominating process because the Secretary has already examined that process and found that it did not violate the LMRDA. The Union also questions whether the Secretary strictly applies the lack of discretion offered as a justification for requiring new nominations in all cases. It points to several cases in which the Secretary did not require new nominations despite the scheduling of a new election occurring more than a year after the original election. The Secretary responds that those cases are distinguishable or merely anomalous.

## **ANALYSIS**

The LMRDA represents a Congressional intention to call upon "the special knowledge and discretion of the Secretary of Labor in order best to serve the public interest." *Dunlop v. Bachowski*, 421 U.S. 560, 568 (1975). As such, "the reviewing court is not authorized to substitute its judgment for the decision of the Secretary" in the enforcement of the Act.[2] *Id.* at

---

[2]   *Dunlop* involved a challenge to the Secretary's decision to not challenge election results, but the analysis of the Secretary's decision as to whether to challenge an election, or to dictate a remedy when a violation has been found, would seem to call upon the same expertise and

3

571. Thus, when the Court is called upon to examine a decision made by the Secretary, it limits its consideration to whether the Secretary's decision "is so irrational as to [render] the decision arbitrary and capricious." *Id.* at 572-73.

The parties have not addressed which of them carries the burden of proof here – that is, whether the burden is on the Union to demonstrate that requiring new nominations <u>is</u> an arbitrary and capricious use of the Secretary's authority or whether the burden is on the Secretary to show that its demand for new nominations <u>is not</u> arbitrary or capricious. The Court's own research has not yielded a clear answer to that question.

Given that 29 U.S.C. § 482(c) indicates that a violation of the LMRDA results in a re-run election "under the supervision of the Secretary," the Court will assume that the Union bears the burden of showing that the Secretary has exceeded his authority in exercising that supervisory power. Thus, the Union bears the burden of proving that the Secretary's demand for new nominations here is arbitrary and capricious.

Taken on its face, the Secretary's justification for the stated policy – that new nominations are required if the original election occurred more than a year before the new election will take place – is logical from an abstract perspective. In a union with frequent turnover in membership, the composition of the union that nominated candidates for the original election may not reflect the changed composition of the current membership. Moreover, allowing nominations made more than a year ago to be fixed in place would prevent newer union members from seeking to nominate themselves or others for consideration in the re-run election. Thus, the Secretary's policy is, on its face, a reasonable exercise of discretion.

---

discretion as the decision to bring a challenge. Thus, for purposes of this case, the Court assumes that the same arbitrary and capricious standard of review applies to the issue here – the Secretary's ability to demand new nomination proceedings incident to a re-run election. The Court notes that both parties here share this assumption.

4

However, the Union points out that the Secretary has not uniformly applied his policy – to the contrary, the Secretary has exercised his discretion **to not require new nominations** in circumstances where more than a year has passed between elections. The Union points to at least three cases as examples.

First, in *Donovan v. Local 3106*, 1983 WL 2031 (M.D.Fl. Mar. 9, 1983), the union held elections for four offices in October 1981. A member challenged the results of that election as unfair, and, in April 1982, the Secretary commenced suit under the LMRDA seeking a new election. Following a bench trial in November 1982 – more than a year after the election – the court held a bench trial on the Secretary's claim. In March 1983, the court found that the union improperly provided preprinted mailing labels for one slate of candidates, but not another, and failed to properly count certain ballots. As a remedy, the court directed that elections for all four offices be re-run. It further directed that nominations be re-opened for <u>one</u> of the offices because two of the three nominees were no longer available as candidates. The decision is silent as to whether the Secretary requested an order directing new nominations for the remaining office -- the court's decision does not mention any such request or attempt to resolve such an issue, and is entirely silent as to any request that might have been made.

The Secretary argues that *Local 3106* is distinguishable from the case at issue in several respects. First, it argues that *Local 3106* involved a case resolved by trial, whereas this action was resolved by the parties via a settlement agreement (albeit one that reserved the issue of whether the Secretary could demand new nominations). The Court sees no meaningful difference, as the question of how the Secretary's policy governing new nominations does not purport to turn on the manner in which the case was resolved. Second, the Secretary points out that the opinion in *Local 3106* does not recite whether the Secretary requested new nominations

5

on the remaining offices.  That is correct, but the fact that the court in *Local 3106* addressed the new nominations for one office but not others suggests that the Secretary did not request new nominations for the remaining offices.  Thus, the Court finds that *Local 3106* lends some support to the Union's position here.

Next, the Union cites to *Donovan v. Local Union No. 505*, S.D.W.Va. Civ. Case. No. 84-3177 (S.D.W.Va. Apr. 5, 1985) (slip op.)  There, the union held elections in November 1983 for various offices, a member challenged the results, and the Secretary ultimately brought suit under the LMRDA.  The April 1985 decision indicates that the parties agreed that the election violated the Act and agreed that new elections for five offices would be re-run.  The parties further agreed that no new nominations would be required for four of the re-run elections, but the court was asked to decide whether the Secretary could require new nominations for the fifth office.  (The court ultimately concluded that new nominations were warranted, given that one of the two candidates for that office had terminated his union membership, rendering an re-run election for that office unopposed.)  *Local 505* does not necessarily reflect <u>when</u> the Secretary conceded that new nominations were unnecessary for the offices – that is, whether more than a year had elapsed from the original election to the Secretary's stipulation to a re-run election without new nominations.  But it is clear that nearly 18 months passed between the original election and the court's decision, and it does not appear that the Secretary ever took the position that a one-year delay would be enough to require new nominations.  The Secretary concedes that *Local 505* would appear to be contrary to the policy, but contends that the decision should simply be viewed as anomalous.

Finally,  the Union points to *Perez v. Local No. 458*, 2015 WL 5009285 (D.Me. Aug, 20, 2015).   There, union elections were held in March 2014, the Secretary sued under the LMRDA

6

in August 2014, and the parties settled the case in April 2015, slightly more than a year after the elections had occurred. The settlement required new elections for two offices. The decision notes that the parties' settlement agreement seemed to concede that, if the same candidates from the prior election remained in the race, no new nominations would be required.

The Secretary argues that *Local No. 458* must be understood in context – that the parties there first settled the matter in principle in late January 2015[3] (approximately 10 months following the election), even though the settlement was not actually finalized and filed with the court until after the one-year anniversary of the prior election. Thus, the Secretary argues, *Local 458* did not implicate the new-nominations-after-one-year policy. The Court rejects this argument. The text of *Local No. 458* decision indicates that the parties' settlement agreement contemplated that the new election would be held as late as four months after the agreement was executed and approved. *Id.* (" Defendant shall conduct a new election. . . no later than four months from the date this stipulation of settlement and dismissal is so ordered by the Court"). Even assuming the parties submitted their agreement to the court promptly after reaching it in January 2015, it would have been clear to the Secretary that the new election might not occur until late May 2015, more than 14 months after the initial election, yet the Secretary chose not to demand new nominations.

Thus, the Court agrees with the Union here that there are at least three examples of circumstances where the Secretary has not followed the accepted policy – or better said exercised discretion to depart from the policy. Unfortunately, there is no explanation as to why the policy was waived in each case, and why it should not be waived in this case.

---

[3]   This Court has some concern that this assertion is evidentiary in nature, as it is not revealed in the written decision in *Local No. 458*, and does not appear in the factual record stipulated to by the parties here. The Court thus gives minimal weight to this assertion.

7

It may be that the policy is applied irregularly, in which case, the Secretary has not identified the particular circumstances in this case that call for it to be applied, rather than being waived. It may be that the decision to apply or waive the policy application turns on additional facts (*e.g.* the length of the delay between elections) that have not been identified and addressed in this case.  It may be that the policy is not a policy at all, but instead simply a *post hoc* justification for this demand for new nominations. \

It is not necessary for the Court to conclusively determine what status the policy generally occupies.  It is sufficient to note 1) that the policy does not appear to conclusively control the question of whether new nominations are required when more than a year has passed between an invalidated election and a new one; and 2) no rational explanation for why the policy is applied some circumstances and not in others has been offered by the Secretary.  In the absence of a rational explanation for the intermittent application of the policy, the Secretary's demand in this case for new nominations is arbitrary and capricious.

Having made the required legal determination that no new nominations can be required by the Secretary and thus that the Union is not legally required to solicit new nominations, the Court pauses to note that there often is a substantial gulf between what is **legal** and what is **wise**. The Union can proceed without new nominations, but the question is whether it should.  The purpose of an election is to give voice to and obtain the "the consent of the governed."  Often the most important and most difficult "consent" to obtain is from those who disagree with persons in power.  Without the willingness of the "discontented" to abide by the majority's decision in an election, resistance, conflict and schism often follow.  The most reliable way to ensure that dissenters and election losers "consent" is to ensure that elections are conducted with scrupulous fairness and that a meaningful opportunity exists for all interested voices to be heard.  Wisdom

8

often dictates that one **exceed** minimum procedural requirements, in order to reduce the opportunity for the loser to cry foul and to maximize the "consent" of the governed.

Although the Court has determined that the Secretary cannot require the Union to reopen nominations, in the absence of an overwhelming reason to not do so – *e.g.* a showing that the nomination process is atypically expensive or time-consuming, or that there has been no meaningful change in membership composition since the last nominations – principles of fairness and accommodation suggest that the Union **should** do so voluntarily.  There has been a considerable passage of time since the original elections in December 2013, and it would not be surprising if the sentiment of the Union's membership regarding nominations has changed.  An open and accommodating process would help ensure that the re-run election is perceived by all involved as fair and would increase the likelihood that even the losing side will be willing to abide by the results; conversely, a re-run election that allows only the minimum required degree of voter participation is more likely to foster election challenges, general discord, and a weakening of the power of the offices that are filled.[4]  Thus, the Court strongly recommends that the Union consider re-opening the nomination procedure, even though it will not direct it.

## **CONCLUSION**

For the foregoing reasons, the Court **GRANTS** both parties' motions for summary judgment (**# 40, 41**), insofar as the Court finds that the facts are undisputed and that the sole

---

[4]  Consider the status of a member who succeeded in obtaining a nomination in December 2013.  That member might be inclined to oppose the re-opening of nominations for the new election, out of fear that he or she might not be re-nominated or that a powerful new opponent might emerge.  Should that member nevertheless secure re-nomination and proceed to win the election, his or her stature in the office would be considerably enhanced by having survived and prevailed in an even more rigorous procedure.  On the other hand, if the member would likely be defeated in a new nomination battle and successfully opposes the re-opening of nominations, that member's statute in office would be diminished by knowing that he or she did not have the true support of his or her constituency.

remaining issue in this case is suitable for resolution without trial. The Court finds that the Secretary is not entitled to direct that new nominations be solicited prior to the anticipated new election that the parties have otherwise agreed to hold, and thus, the Court enters judgment in favor of the Union on the sole remaining claim herein. The Clerk shall enter judgment consistent herewith and close this case.

Dated this 20th day of July, 2016.

**BY THE COURT:**

_____

Marcia S. Krieger
Chief United States District Judge